## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SMARTMOVING SOFTWARE, LLC,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **DWYGHT MACK, MACK'S MOVING** | ) | **JURY TRIAL** |
| **COMPANY, LLC, MACK'S MOVING** | ) | |
| **TRAINING, LLC, MACK'S** | ) | |
| **RELOCATION & STORAGE, LLC,** | ) | |
| **AND MACK'S MOVE MANAGEMENT,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## SMARTMOVING SOFTWARE, LLC'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff SmartMoving Software, LLC ("SmartMoving"), by and through its counsel, files this Verified Original Complaint and Application for Temporary Restraining Order against Defendants Dwyght Mack ("Mack"), Mack's Moving Company, LLC ("Mack's Moving"), Mack's Moving Training, LLC ("Mack's Training"), Mack's Relocation & Storage, LLC ("Mack's R&S"), and Mack's Move Management, LLC ("Mack's Move Management") (collectively, "Defendants"), and would respectfully show the Court as follows:

### I.      NATURE OF THE ACTION

1.  This action arises out of Defendants' illegal access and use of SmartMoving's platform, which includes enterprise resource planning ("ERP") and customer relationship management

("CRM") software (the "Platform"), to build a similar platform for their own benefit, in violation of SmartMoving's Terms of Service as well as Texas and federal law.

2.    SmartMoving has invested significant resources in developing and protecting its Platform. SmartMoving's Platform contains proprietary, confidential, commercially sensitive, and trade secret information as well as other protected intellectual property. Defendants' illegal access and use of SmartMoving's Platform has and will continue to damage SmartMoving irreparably.

3.    As a result, SmartMoving files this suit to protect its confidential and trade secret information and other commercial rights and seeks immediate and permanent injunctive relief and monetary damages.

## II.    PARTIES

4.    Plaintiff SmartMoving is a limited liability company duly organized and existing under the laws of Delaware with its principal place of business located at 12720 Hillcrest Road, Suite 980, Dallas, TX 75230 in this District.

5.    Defendant Dwyght Mack is an individual residing at 1016 Chipola Road, Fort Pierce, Florida, 34950.

6.    Defendant Mack's Moving Company, LLC ("Mack's Moving") is a limited liability company duly organized and existing under the laws of New York with its principal place of business located at 4 Center Court, Green Island, New York, 12183. Mack's Moving can be served through its registered agent for service of process, United States Corporation Agents, Inc., 7014 13th Avenue, Brooklyn, New York, 11228.

7.    Mack's Training, LLC (Mack's Training") is a limited liability company duly organized and existing under the laws of New York with its principal place of business located at 4 Center

Court, Green Island, New York, 12183. Mack's Training can be served through its registered agent for service of process, Dwyght Mack, 4 Center Court, Green Island, New York, 12183.

8.  Defendant Mack's Relocation & Storage, LLC ("Mack's R&S") is a dissolved limited liability company organized under the laws of Florida with its former principal place of business at 4285 SW Martin, Suite 107, Palm City, Florida 34490. Mack's R&S can be served through its registered agent for service of process, Dwyght Mack, 4285 SW Martin, Suite 107, Palm City, Florida 34490.

9.  Defendant Mack's Move Management, LLC ("Mack's Move Management") is a dissolved limited liability company organized under the laws of Florida with its former principal place of business at 4285 SW Martin, Palm City, Florida 34490. Mack's Move Management can be served through its registered agent for service of process, Dwyght Mack, 4285 SW Martin, Suite 107, Palm City, Florida 34490. [1]

### III.    JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 because SmartMoving's claims under the Defense of Trade Secrets Act, "DTSA," 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, arise under the laws of the United States. The Court further has jurisdiction over the case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the suit is between citizens of different states. SmartMoving is a citizen of Delaware and Texas, and Defendants are citizens of New York and Florida.

---

[1] Mack's R&S and Mack's Move Management were recently dissolved on January 19, 2023. Under Florida Statutes Section 605.0717, dissolution of a limited liability company does not prevent the commencement of a proceeding against the limited liability company in its name or terminate the authority of the registered agent of the limited liability company.

11. The Court has personal jurisdiction over Defendants. SmartMoving's claims in this matter arise out of and are related to Defendants' contacts with Texas. From March 2, 2021, Defendants regularly accessed SmartMoving's software in Texas as described below.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to SmartMoving's claims occurred within this District. Alternatively, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3). Plaintiff and Defendants Mack, Mack's Moving, and Mack's R&S are also parties to a Terms of Service agreement, governing use of SmartMoving's software, which provides for venue in this District.

## IV. FACTUAL BACKGROUND

### A. Overview of SmartMoving's Intellectual Property

13. SmartMoving is a technology company specializing in software, ERP, and CRM systems to help moving companies create growth and run their businesses seamlessly.

14. ERP generally refers to a software system that helps organizations automate and manage core business functions. CRM generally refers to technology, usually a software application system, used by companies to manage company relationships and interactions with customers and potential customers. Quality ERP and CRM software systems help companies successfully market their business, streamlines processes, and improve profitability.

15. SmartMoving provides a subscription-based Platform specifically designed to meet the needs of moving companies. SmartMoving's Platform include tools, training, and support that allow SmartMoving's clients to perform a variety of important tasks, including, among others: (1) tracking sales, advertisements, revenue, and client communications; (2) managing bookings, scheduling, and crews; (3) managing storage and recurring billing; (4) creating and communicating

estimates; (5) receiving digital signatures and online payments; and (6) facilitating invoicing, accounting, and payroll.  SmartMoving's clients pay SmartMoving to access its Platform.

16. SmartMoving's Platform contains confidential, proprietary, and commercially sensitive information. Certain features that make SmartMoving's Platform successful are protected trade secrets. For example, SmartMoving's auto pricing engine, workflows, and design layout are protected trade secrets ("Trade Secrets").

17. The SmartMoving auto pricing engine is a rules-based pricing engine that took SmartMoving several years to develop, based on an immense amount of customer feedback and research, and is unique to the SmartMoving Platform.  In addition to the auto pricing engine, SmartMoving's workflow and design layout provide SmartMoving's main competitive advantages, with a clean, modern design and well-organized intuitive user interface.  Before SmartMoving came into the market, competitive software solutions for moving companies generally had complex interfaces, which were difficult to learn and operate.

18. SmartMoving has invested significant resources in designing and maintaining its Platform to provide one of the leading all-in-one solutions for moving companies that is both customizable and user friendly. SmartMoving's Trade Secrets enable SmartMoving to offer a Platform with a user-friendly layout and intuitive features. The layout, design, and usability of the Platform are a big differentiator for SmartMoving and give it a competitive advantage in the market.

19. SmartMoving spent many years and millions of dollars developing the current version of its Platform.  SmartMoving has had approximately two dozen full-time and contract software engineers participate in the development of its Platform and Trade Secrets.

20. SmartMoving tightly controls access to its Trade Secrets. Access to SmartMoving's code repository underlying its Platform is tightly controlled through two-factor authentication.  Every

code check-in and check-out is logged and tied back to the user ID who accessed the repository. Every SmartMoving full-time engineer and contractor must sign a nondisclosure agreement as well as an intellectual property assignment agreement, and no one on the SmartMoving team beyond the engineers has access to the SmartMoving code repository.

21. Third party users of SmartMoving's Platform can view and interact with the Platform's user interface reflecting SmartMoving's Trade Secrets, but do not have access to SmartMoving's underlying code. The user-facing Platform is only accessible through a password-protected, paid subscription account and subject to SmartMoving's Terms of Service. In order to protect its Trade Secrets, SmartMoving carefully governs and monitors access to its Platform, and requires users to agree to detailed Terms of Service restricting their use of Platform software as further described below.

22. Access to SmartMoving's Platform is limited to registered users who subscribe to and pay for a subscription plan. All users must provide certain identifying information that is associated with their account, including credit card information, the company name, email address, phone number, and website as well as the account administrator and the administrator's email address and phone number. Once an account is created, the account can only be accessed by username and password.

23. To create an account, a user must agree to SmartMoving's Terms of Service. Upon completing a new account, SmartMoving records a digital certificate of completion with the new user's information, which confirms the user's acceptance of SmartMoving's Terms of Service. SmartMoving's Terms of Service are attached as Exhibit A and incorporated by reference.

**B.  SmartMoving's Terms of Service**

24. SmartMoving's Terms of Service provide:

> Unless otherwise indicated, the Site is our proprietary property and all source code, databases, functionality, software, website designs, audio, video, text, photographs, and graphics on the Site (collectively, the "Content") and the trademarks, service marks, and logos contained therein (the "Marks") are owned or controlled by us or licensed to us, and are protected by copyright and trademark laws and various other intellectual property rights and unfair competition laws of the United States, international copyright laws, and international conventions.

Ex. A at 3.

25. The Terms of Service further provide that eligible users are granted a limited license to access and use the site and to download or print content that they have properly gained access to solely for personal, non-commercial use. *Id.* Likewise, the Terms of Service provide that users have a revocable, non-exclusive, non-transferable, limited right to install and use a mobile application of SmartMoving's Platform only on wireless electronic devices that are owned or controlled by the user in accordance with the Terms of Service. *Id.* at 14.

26. The Terms of Service provide that the user of SmartMoving's Platform, including the site and mobile application, agrees not to engage in certain prohibited conduct, which includes, but is not limited to:

> a. Systematically retrieving data or other content from the site to create or compile, directly or indirectly, a collection, compilation, database, or directory;
>
> b. Making any unauthorized use of the site;
>
> c. Using the site as part of any effort to compete with SmartMoving or for any revenue-generating endeavor or commercial enterprise;
>
> d. Selling or transferring a user profile;
>
> e. Bypassing any measure of the site designed to prevent or restrict access to any portion of the site;
>
> f. Deciphering, decompiling, disassembling, or reserve engineering any of the software making up any part of the site;
>
> g. Deleting copyright or any other proprietary rights notices from any content;

      h.   Copying or adapting site software including, but not limited to, Flash, PHP, HTML, JavaScript, or other code;

      i.   Making the mobile application available over a network or other environment permitting access or use by multiple devices or users at the same time; and

      j.   Using the site in any manner inconsistent with any applicable laws or regulations.

Ex. A at 11, 12, 14, 15.

27. In order to monitor compliance with its Terms of Service and protect its intellectual property, SmartMoving uses tools to track users' access to its Platform. For example, SmartMoving uses IP address reporting to track the unique IP addresses from which a user accesses his account. This information provides the location from which the account was accessed. Similarly, SmartMoving also uses a tool called "Fingerprint reporting." Fingerprint reporting shows each unique device used to access a user's account, including when the access took place and the number of logins for each device. These tools can alert SmartMoving to potential unauthorized access to its Platform through a pattern of unusual activity.

28. The Terms of Service also contain provisions addressing governing law and dispute resolution. The Terms of Service, as well as the user's use of the Platform, are governed by and construed in accordance with the laws of Texas, without regard to conflicts of law principles.  Ex. A at 21.  The Terms of Service further provide that disputes shall be commenced or prosecuted in the state and federal courts located in Dallas, Texas; the user consents to jurisdiction and waives all defenses of lack of personal jurisdiction and forum non conveniens.  *Id.* at 23.

29. While the Terms of Service provide for pre-filing dispute resolution and arbitration of certain disputes, the Terms of Service expressly exempt from these pre-filing requirements:  (1) disputes seeking to enforce or protect intellectual property rights; (2) disputes related to, or arising

from, allegations of theft or unauthorized use; and (3) any claim for injunctive relief. *Id.* at 24–25. This lawsuit satisfies each exception to the pre-suit requirements.

## C. Defendants' Unauthorized Access, Disclosure, and Use of SmartMoving's Platform

30. Mack owns and operates a family of companies in the moving industry, including: Mack's Moving, Mack's Training, Mack's R&S, and Mack's Move Management. Mack's Moving provides moving services in Albany, Troy, Green Island, and Clifton Park, New York. Per promotional materials on Facebook, Instagram, and YouTube, Mack's Training and/or Mack's Move Management are focused on providing training and owner/managerial support for others in the moving business.

31. Dwyght Mack, on behalf of Mack's Moving, created a SmartMoving account and agreed to SmartMoving's Terms of Service on March 2, 2021. The company on the account was identified as "Mack's Moving Company," and the administrator on the account was identified as Mack. The certificate of completion of the account is attached as Exhibit B and incorporated by reference. Mack also identified Mack's R&S as a branch in his SmartMoving account.

32. Mack, as administrator for Mack's Moving, only had the right to access and use SmartMoving's Platform on behalf of Mack's Moving and Mack's R&S.

33. Furthermore, as a user of SmartMoving's Platform, and according to SmartMoving's Terms of Service, Mack, Mack's Moving, and Mack's R&S were prohibited from making any unauthorized use of SmartMoving's Platform, including the activities listed in Paragraph 26 above.

34. Nevertheless, SmartMoving recently learned that Mack, on behalf of Mack's Moving and/or one or more other entities owned and operated by Mack, including Mack's Training, Mack's R&S, and Mack's Move Management, has made or caused to be made unauthorized access and use of SmartMoving's software.

35. SmartMoving first became aware of Defendants' unauthorized access and use of SmartMoving's software on January 16, 2023 when it reviewed a Facebook promotion, posted by Mack on November 9, 2022, in which Mack announced that Mack's Move Management would be launching CRM software in the first quarter of 2023. Mack advertised that its new CRM would be geared to "knowing your numbers, reducing claims, and keeping your employees satisfied ensuring there [sic] getting paid with accuracy."

36. The post included a screenshot of the CRM interference, which is similar in appearance to SmartMoving's CRM interface and appears to incorporate SmartMoving's elements from SmartMoving's Platform design and workflow.



37. Despite the announcement that Mack's Move Management was launching new CRM software in the first quarter of 2023, Mack dissolved Mack's Move Management in January 2023 and formed Mack's Training. Mack's recent social media promotions indicate that he is currently focused on building his newly formed Mack's Training. On information and belief, SmartMoving's proprietary, confidential, commercially sensitive information and Trade Secrets are being improperly accessed and used by one or more of Defendants.

38. As further evidence of Defendants' unauthorized access and use of SmartMoving's Platform, SmartMoving's IP address and fingerprint reports show a pattern of unusual and concerning activity on Mack's and Mack Moving's account. The IP report, attached as Exhibit C and incorporated by reference, shows the account has been accessed from three different IP addresses in Surat, India. The Fingerprint report, attached as Exhibit D and incorporated by reference, shows the account has been accessed from over 30 different devices from November 9, 2022 to January 24, 2023. In contrast, most SmartMoving accounts are accessed by only a few different devices.

39. On information and belief, Mack, on behalf of himself and/or one or more of Mack's Moving, Mack's Training, Mack's R&S, and Mack's Move Management, has willfully and intentionally permitted unauthorized third party access to his SmartMoving account for unauthorized purposes, including those listed in Paragraph 26 above, to create a competing CRM software for companies owned and/or operated by him including Mack's Moving, Mack's Training, Mack's R&S, and Mack's Move Management. The IP address report, showing repeat access to Mack's and Mack's Moving's SmartMoving account from IP addresses in India, clearly suggests that Mack has illegally shared his SmartMoving account information with software developers in India for purposes of creating competing CRM software.

40. Having misappropriated SmartMoving's proprietary, confidential, commercially sensitive information, Trade Secrets, and other intellectual property, on behalf of Mack and/or one or more of Mack's Moving, Mack's Training, Mack's R&S, and Mack's Move Management, Mack is now advertising its competing CRM software with similar features and similar design elements as SmartMoving's Platform. SmartMoving has customers across the United States, including in the southern Florida and Albany, New York areas where Defendants operate. Mack is also marketing the CRM software more broadly online. SmartMoving risks losing customers to Defendants' competing software illegally incorporating SmartMoving's Trade Secrets.

41. Pursuant to its right to do so under the Terms of Service, Ex. A at 19–20, effective at midnight CST on February 1, 2023, SmartMoving suspended access to Mack's and Mack's Moving SmartMoving account to prevent any further unauthorized access or use of its Trade Secrets and other proprietary information and intellectual property. Despite having suspended access to the account, Defendants' conduct in misappropriating SmartMoving's proprietary, confidential, commercially sensitive information and Trade Secrets and theft of other SmartMoving Platform content has caused and will continue to cause SmartMoving imminent, irreparable injury and monetary damages.

## V.    COUNT ONE: BREACH OF CONTRACT
### (as to Mack, Mack's Moving, and Mack's R&S)

42. SmartMoving realleges all of the allegations in the paragraphs above.

43. SmartMoving, Mack, Mack's Moving, and Mack's R&S were parties to the Terms of Service.

44. The Terms of Service is a valid and enforceable contract.

45. SmartMoving performed all of its obligation under the Terms of Service.

46. Mack, Mack's Moving, and Mack's R&S, directly and/or through their agents, breached the Terms of Service by improperly accessing and using SmartMoving's Platform in a manner that is prohibited by the Terms of Service, including:

    a. Systematically retrieving data or other content from the site to create or compile, directly or indirectly, a collection, compilation, database, or directory;

    b. Making unauthorized use of the site;

    c. Using the site as part of an effort to compete with SmartMoving or for a revenue-generating endeavor or commercial enterprise;

    d. Selling or transferring their user profile;

    e. Bypassing measures of the site designed to prevent or restrict access to portions of the site;

    f. Deciphering, decompiling, disassembling, or reserve engineering software making up parts of the site;

    g. Deleting copyright or other proprietary rights notices from content;

    h. Copying or adapting site software including, but not limited to, Flash, PHP, HTML, JavaScript, or other code;

    i. Making the mobile application available over environments permitting access or use by multiple devices or users at the same time; and

    j. Using the site in a manner inconsistent with applicable laws.

47. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Mack's, Mack's Moving's, and Mack's R&S's breaches, as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

## VI.    COUNT TWO:  MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFENSE OF TRADE SECRETS ACT/TEXAS UNIFORM TRADE SECRETS ACT
### (as to all Defendants)

48. SmartMoving realleges all of the allegations in the paragraphs above.

49. SmartMoving owns Trade Secrets consisting of, among other things, its auto pricing engine, workflows, and design layout.

50. SmartMoving has taken reasonable measures under the circumstances to maintain the confidentiality of the Trade Secrets. Among other things, SmartMoving strictly controls access to its software code repository. Furthermore, SmartMoving limits access to its user-facing Platform to registered users; requires users to access the Platform through password-protected accounts; requires users to agree to its Terms of Service; and monitors access to its Platform.

51. SmartMoving's Trade Secrets are valuable and not generally known to the public or readily ascertainable through proper means.

52. Defendants willfully and maliciously misappropriated SmartMoving's Trade Secrets by making unauthorized use of the Trade Secrets, copying or duplicating the trade secrets, and/or providing unauthorized access to SmartMoving's Trade Secrets to third parties.

53. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Defendants' misappropriation as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

### VII.    COUNT THREE:  CONVERSION
### (as to all Defendants)

54. SmartMoving realleges all of the allegations in the paragraphs above.

55. SmartMoving owns personal property in the form of its Platform and associated software including the intellectual property contained therein.

56. Defendants wrongfully exercised dominion or control of the property exceeding and inconsistent with any authorized use and in violation of SmartMoving's Terms of Service.

57. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Defendants' conversion as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

## VIII.    COUNT FOUR:  CIVIL THEFT
### (as to all Defendants)

58. SmartMoving realleges all of the allegations in the paragraphs above.

59. Defendants unlawfully appropriated SmartMoving's software without SmartMoving's effective consent by making unauthorized use of SmartMoving's software, copying or duplicating SmartMoving's software, and/or providing unauthorized access to SmartMoving's software to third parties.

60. Defendants are civilly liable for their theft as a result of appropriating SmartMoving's software without SmartMoving's effective consent under Section 134.003 of the Texas Civil Practice & Remedies Code and Section 31.03 of the Texas Penal Code.

61. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Defendants' theft as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

## IX.    COUNT FIVE:  UNFAIR COMPETITION
### (as to all Defendants)

62. SmartMoving realleges all of the allegations in the paragraphs above.

63. Defendants unfairly competed by misappropriating SmartMoving's Trade Secrets to create competing CRM software marketed and sold to SmartMoving's customers and potential customers.

64. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Defendants' unfair competition as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

## X.    COUNT SIX:  HARMFUL ACCESS BY COMPUTER
### (as to all Defendants)

65. SmartMoving realleges all of the allegations in the paragraphs above.

66. Defendants knowingly and intentionally accessed SmartMoving's computer network, computer program, or computer system without SmartMoving's effective consent by making unauthorized use of SmartMoving's data and/or providing unauthorized access to SmartMoving's computer network, computer program, or computer system to third parties.

67. By knowingly and intentionally accessing SmartMoving's computer network, computer program, or computer system without effective consent, Defendants have violated the Texas Harmful Access by Computer Act, codified under Section 33.02 of the Texas Penal Code, which creates a civil cause of action under Section 143.001 of the Texas Civil Practice and Remedies Code.

68. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Defendants' violations of the Texas Harmful Access by Computer Act as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

## XI.    COUNT SEVEN:  VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (as to all Defendants)

69. SmartMoving realleges all of the allegations in the paragraphs above.

70. Defendants intentionally accessed a protected computer, which is used in or affects interstate commerce or communication.

71. Defendants lacked authority to access the computer or exceeded granted authority to access the computer by making unauthorized use of SmartMoving's software, copying or duplicating SmartMoving's software, and/or providing unauthorized access to SmartMoving's software to third parties.

72. Defendants obtained data from the computer.

73. Defendants caused or will cause a loss of more than $5,000 to SmartMoving during a one-year span.

74. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Defendants' violations of the Computer Fraud and Abuse Act as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

## XII.     COUNT EIGHT:  CIVIL CONSPIRACY
### (as to all Mack's Moving, Mack's Training, Mack's R&S, and Mack's Move Management)

75. SmartMoving realleges all of the allegations in the paragraphs above.

76. Mack's Moving, Mack's Training, Mack's R&S, and Mack's Move Management formed a combination of two or more persons to accomplish an unlawful purposes or a lawful purpose by unlawful means, including: making and/or permitting unauthorized access to and use of SmartMoving's software; misappropriating SmartMoving's proprietary, confidential, commercially sensitive information, Trade Secrets, and other intellectual property; and using SmartMovings's proprietary, confidential, commercially sensitive information, Trade Secrets, and other intellectual property to create competing CRM software.

77. Mack's Moving, Mack's Training, Mack's R&S and Mack's Move Management formed a meeting of the minds about the object of their conspiracy.

78. Mack's Moving, Mack's Training, Mack's R&S and Mack's Move Management had knowledge of the object and purpose of the conspiracy.

79. Mack's Moving, Mack's Training, Mack's R&S and Mack's Move Management committed at least one unlawful, overt act in furtherance of the conspiracy.

80. SmartMoving has suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of the conspiracy as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

### XIII.    REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

81. SmartMoving realleges all of the allegations in the paragraphs above.

82. SmartMoving seeks temporary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65. SmartMoving's verified pleading demonstrates (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury for which there is no adequate remedy at law; (3) that the threatened injury to SmartMoving outweighs the threatened injury to Defendants; and (4) that granting injunctive relief does not disserve the public interest.

83. SmartMoving is suffering and will continue to suffer irreparable harm and irreparable injury if Defendants are not enjoined and restrained from further unlawful use and/or disclosure of SmartMoving's proprietary, confidential, commercially sensitive information, Trade Secrets, and intellectual property. A temporary restraining order and a temporary injunction are necessary because the harm to SmartMoving is imminent. Defendants are currently making use of SmartMoving's Trade Secrets and intellectual property to operate a competing business and advertise their services. Mack has announced his intent to launch competing CRM software incorporating SmartMoving's proprietary, confidential, commercially sensitive information and Trade Secrets in the first quarter of 2023. Furthermore, on information and belief, Defendants have

permitted unauthorized access to SmartMoving's Platform by unknown third parties, who may be making further unauthorized use of SmartMoving's trade secrets and intellectual property.

84. The harm to SmartMoving greatly exceeds any harm that may be caused to Defendants if temporary injunctive relief is granted, in light of the fact that Defendants have exceeded any authority to access or use SmartMoving's Platform. Furthermore, Defendants had no right to compile, decompile, reverse engineer, or otherwise duplicate SmartMoving's software. And Defendants had no right to permit third parties to make unauthorized use or access to SmartMoving's Platform. SmartMoving has a reasonable likelihood of prevailing on the merits.

85. If a temporary restraining order and a temporary injunction are not issued, the continued harm to SmartMoving will be irreparable, for which SmartMoving has no adequate remedy at law. The damage done by Defendants' unlawful use and disclosure of SmartMoving's proprietary, confidential, commercially sensitive information, Trade Secrets, and intellectual property is not measurable by any certain pecuniary standard. If Defendants are not restrained and enjoined, SmartMoving will be irreparably harmed and suffer irreparable injury through the loss of the ability to protect its intellectual property rights and the loss of goodwill and its competitive advantage in the marketplace.

86. Unless Defendants are restrained as requested herein, any monetary judgment SmartMoving might obtain against Defendants will be an ineffective remedy.

87. Specifically, SmartMoving requests that Defendants be restrained and enjoined pending the final determination of this action as follows:

    a. Prohibiting any use, disclosure, or distribution of any information obtained from SmartMoving's Platform, including the site or mobile application.

    b. Requiring Defendants to disclose to SmartMoving immediately the identity of any person or entity, if any, to whom Defendants provided access to SmartMoving's Platform or to whom Defendants disclosed SmartMoving's confidential information.

    c.   Requiring the immediate preservation of all documents and information related to the claims in this case, whether in electronic form or hard copy.

    d.   Requiring the immediate preservation of any and all networks, devices, and media owned, controlled, or used by Defendants which were used to access SmartMoving's Platform, including all devices listed on Exhibit D.

    e.   Requiring Defendants to allow access by SmartMoving or its designee to all networks, devices, and media owned, controlled, or used by Defendants which were used to access SmartMoving's Platform and on which SmartMoving's Trade Secrets and intellectual property may be stored so that those networks, devices, and media may be forensically examined.

    f.   Excepting the obligation to preserve one copy of all evidentiary material, as set forth in c. and d. above, requiring Defendants destroy all copies (in all formats whether electronic or otherwise) of SmartMoving's Trade Secrets and intellectual property located through the aforementioned forensic examination(s), within two days of such forensic examination(s).

    g.   Requiring Defendants to refrain from publishing or sharing any content, including any web content or mobile application content, containing SmartMoving's Trade Secrets and intellectual property located through the aforementioned forensic examination(s) with any third party.

    h.   Requiring Defendants to refrain from any marketing or promotion containing any content, including any web content or mobile application content, incorporating SmartMoving's Trade Secrets and intellectual property located through the aforementioned forensic examination(s) with any third party.

88. SmartMoving is willing to post bond, or cash deposit in lieu of bond, as ordered by this Court.

89. SmartMoving is suffering and will continue to suffer irreparable injury if Defendants are not enjoined and restrained as described above until a full trial on the merits. The harm to SmartMoving, as described herein, greatly exceeds any harm that may be caused to Defendants if temporary injunctive relief is granted. SmartMoving has a reasonable likelihood of prevailing on the merits of its claims. Therefore, SmartMoving requests, after hearing and presentation of evidence, that the Court issue a preliminary injunction and, later, a permanent injunction, in a form similar to that described above in regard to the application for temporary restraining order. Such

injunction is in the public interest because businesses must be able to protect their trade secrets and other intellectual property from theft, misuse, and unfair competition. SmartMoving has no other adequate remedy at law if Defendants' unlawful acts continue through trial.

## XIV.   ATTORNEYS' FEES

90. SmartMoving repeats and realleges the preceding paragraphs as if fully set forth herein.

91. Because of Defendants' misconduct, SmartMoving has been forced to retain counsel and proceed with this litigation. SmartMoving is entitled to recover its attorneys' fees pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D), and/or the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.005; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; breach of the Terms of Service, Tex. Civ. Prac. & Rem. Code § 38.001(8); the Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code §143.002; and the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §134.005.

## XV.   EXEMPLARY AND STATUTORY DAMAGES

92. SmartMoving is entitled to recover exemplary damages pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(C), and/or the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.004; and statutory damages pursuant to the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §134.005.

## XVI.   CONDITIONS PRECEDENT

93. All conditions precedent have occurred.

## XVII.  JURY DEMAND

94. Plaintiff demands a jury trial on all issues so triable.

## XVIII. PRAYER FOR RELIEF

21

WHEREFORE, SmartMoving requests that the Court enter judgment in its favor as follows:

a. Damages in an amount to be determined at trial as a result of Defendants' breach of contract, misappropriation of trade secrets, conversion, civil theft, unfair competition, Harmful Access by Computer, violations of the Computer Fraud and Abuse Act, and civil conspiracy;

b. Disgorgement of benefits accrued to Defendants unjustly;

c. Exemplary and statutory damages in the maximum amount permitted by law;

d. Attorneys' fees and costs;

e. Pre- and post-judgment interests in the maximum amount permitted by law;

f. a Temporary Restraining Order, and eventually a Temporary and Permanent Injunction, enjoining Defendants, and all persons acting on their behalf, in concert with them, or under their control, as follows:

  i. Prohibiting any use, disclosure, or distribution of any information obtained from SmartMoving's Platform, including the site or mobile application.

  ii. Requiring Defendants to disclose to SmartMoving immediately the identity of any person or entity, if any, to whom Defendants provided access to SmartMoving's Platform or to whom Defendants disclosed SmartMoving's confidential information.

  iii. Requiring the immediate preservation of all documents and information related to the claims in this case, whether in electronic form or hard copy.

  iv. Requiring the immediate preservation of any and all networks, devices, and media owned, controlled, or used by Defendants which were used to access SmartMoving's Platform, including all devices listed on Exhibit D.

  v. Requiring Defendants to allow access by SmartMoving or its designee to all networks, devices, and media owned, controlled, or used by Defendant which were used to access SmartMoving's Platform and on which SmartMoving's trade secrets and intellectual property may be stored so that those networks, devices, and media may be forensically examined.

  vi. Excepting the obligation to preserve one copy of all evidentiary material, as set forth in iii. and iv. above, requiring Defendant to destroy all copies (in all formats whether electronic or otherwise) of SmartMoving's trade secrets and intellectual property located through the aforementioned forensic examination(s), within two days of such forensic examination(s).

vii. Requiring Defendants to refrain from publishing or sharing any content, including any web content or mobile application content, containing SmartMoving's trade secrets and intellectual property located through the aforementioned forensic examination(s) with any third party.

viii. Requiring Defendants to refrain from any marketing or promotion containing any content, including any web content or mobile application content, incorporating SmartMoving's Trade Secrets and intellectual property located through the aforementioned forensic examination(s) with any third party.

g.  All other relief to which Plaintiff is justly entitled.

Dated: February 2, 2023                    Respectfully submitted,

                                            */s/ Maria Wyckoff Boyce*
                                           **Maria Wyckoff Boyce, Lead Attorney**
                                           Texas SBN 22095050
                                           maria.boyce@hoganlovells.com
                                           **Cristina Espinosa Rodriguez**
                                           Texas SBN 00793701
                                           cristina.rodriguez@hoganlovells.com
                                           **Jillian C. Beck**
                                           Texas SBN 24082672
                                           jillian.beck@hoganlovells.com
                                           **Lacy G. Brown**
                                           Texas SBN 24080906
                                           lacy.brown@hoganlovells.com
                                           **HOGAN LOVELLS US LLP**
                                           609 Main Street, Suite 4200
                                           Houston, Texas 77002
                                           Tel:    (713) 632-1400
                                           Fax:    (713) 632-1401

                                           **Mark J. Dyer**
                                           Texas SBN 06317500
                                           dyer@mdjwlaw.com
                                           **MARTIN, DISIERE, JEFFERSON & WISDOM**
                                           9111 Cypress Waters Blvd., Suite 250
                                           Dallas, Texas 75019
                                           Tel:  (214) 420-5510
                                           Fax: (214) 420-5501

                                           ***Counsel for Plaintiff SmartMoving Software, LLC***

## **VERIFICATION**

I, Tobe Thompson, am the Chief Executive Officer of SmartMoving Software, LLC ("SmartMoving"). I am over 18 years of age and am authorized to make this verification on SmartMoving's behalf. Based on my personal knowledge and a review of SmartMoving's records, the factual allegations in paragraphs 13 to 41 of the foregoing Verified Original Complaint and Application for Temporary Restraining Order are true to the best of my knowledge.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on February 2, 2023 in Indian Rocks
Beach, Florida

Tobe Thompson